## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BRYANT BANES, NEVA BANES, CARLTON JONES, and NB RESEARCH, INC., on Behalf of Themselves and Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   Case No.: 1:17-cv-01191-MBH |

### FIRST AMENDED CLASS ACTION COMPLAINT

Now come the Named Plaintiffs and Class Representatives, BRYANT BANES, NEVA BANES, CARLTON JONES, and NB RESEARCH, INC., individually and on behalf of all others similarly situated, who file this class action complaint and claim for taking of their real and personal property entitling them to just compensation under the Fifth Amendment to the United States Constitution by the intentional action of the U.S. Army Corps of Engineers, Galveston District ("Corps"), in concert with government actors and instrumentalities both known and unknown, and in support thereof, show as follows:

#### PARTIES

(1) Plaintiffs, BRYANT BANES, NEVA BANES, and CARLTON JONES, are natural persons, of the full age of majority, homeowners, and business owners domiciled in, and citizens of, the State of Texas, Harris County.

(2) Plaintiff, NB RESEARCH, INC., is a Texas corporation, located in Harris County.

(3) Plaintiffs, individually, and on behalf of all others similarly situated in the State of

Texas constituting the class they seek to have certified pursuant to Rule 23 of the Federal Rules of Civil Procedure.

(4) Defendant is the United States government, including the Corps and any federal or state instrumentality, such as the Harris County Flood Control District ("HCFCD"), all of whom may be served through the National Courts Section, Commercial Litigation Branch, Civil Division U.S. Department of Justice, Washington, DC 20530, Tel.: (202) 514-7300.

JURISDICTION AND VENUE

(5) This Court has venue and jurisdiction to award just compensation for this takings claim pursuant to the Fifth Amendment to the United States Constitution and 28 U.S.C. § 1491.

FACTUAL ALLEGATIONS

(6) On August 25, 2017, Hurricane Harvey, a Category 4 Hurricane ("Harvey"), made landfall on the Texas Gulf Coast. President Trump declared areas affected by Harvey a major disaster area the same day. Over the next four (4) days, Harvey dumped an incredible amount of rain on the Texas coast, causing widespread devastation and flooding.

(7) By August 29, 2017, Harvey had largely passed Houston and was moving on to other areas. Houston saw sunshine for the first time in days.

(8) While thousands had been flooded or damaged by the storm, many home and business owners along Buffalo Bayou—who had never experienced flooding and were not in a known flood plain—believed they were now safe and would recover. They were wrong. What Harvey had brought would now be superseded by the Corps' actions.

(9) On August 29, 2017, the Corps announced it had made the "difficult" decision to make "unexpected controlled releases" from the Barker and Addicks dams ("dams") to "full

discharge" in order to "maintain control of the dams."

(10)     As early as 2016, the Corps knew that the dams—as they were currently constructed and maintained, and assuming a storm with the magnitude of Harvey—would require the release of water of the magnitude experienced in August 2017.  In 2009, the Corps rated the dams among the nation's six (6) most unsafe dams.

(11)     The Corps has the primary responsibility for land management, management and operation of the dams, and the course of water flows.  The Corps directed other government agencies and instrumentalities to carry out its wishes with the respect to its decisions.  The HCFCD specifically disclaimed responsibility for land and dam management and course of water flows on its website, so there is no state remedy to pursue.

(12)     The Corps' decision to take control of the flowage easements over private home and business property and make "unexpected controlled releases" was knowing and intentional.  At the time it was made, it was foreseeable and the Corps knew, or should have known, that it was sacrificing and condemning hundreds or even thousands of homes along Buffalo Bayou, including the real property, their contents, and their future property values.

(13)     The water releases by the Corps fed into Buffalo Bayou at the rate of 13,000 cubic feet per second or more.  This directly impacted areas around Buffalo Bayou from Dairy Ashford to Interstate 610 (Texas) – raising water levels two (2) feet or more in less than a day and directly causing additional flooding for hundreds more homes and businesses, including the home and home business offices of the Named Plaintiffs and their neighbors.

(14)     As of this filing, the Corps or its agents have announced that it will maintain the current dam release and flood levels, and that homes and businesses having water damage will not be accessible or have power for weeks.  By the second week of this period, most homes and

businesses experiencing any water damage will be a total loss due to mold and other causes. Moreover, the value in terms of lost property value to home and business owners, and lost tax revenue to Harris County, is in the billions of dollars.

(15)	The decisions by the Corps have also altered the course of Buffalo Bayou in such a manner that future flooding will be more likely in areas not previously subject to flooding, leading to further business interruptions and losses in home value and tax revenue.

(16)	None of these Corps decisions or their impacts could have been anticipated or mitigated by the affected homeowners, business owners, or management associations, as none were in a so-called flood plain and none had experienced flooding in recent memory. Further, many of these homes were without power during the time period in which the Corps made their decision to release the dams.

(17)	In its October 29, 2014 and March 6, 2016 public presentations on "dam safety," the Corps stated, "Houston is NOT in imminent danger of flooding from Barker and Addicks" and that "[d]am failure is not likely." Both of these statements proved false during Harvey. Prior flooding from 2015 forward and maintenance issues for the dams had put the Corps on notice that such statements were suspect at best, but they continued to make them in 2016 nonetheless.

(18)	Because of the statements in Paragraph 17, and other similar statements by the Corps, most homeowners along Buffalo Bayou did not have flood insurance in areas where their mortgage companies do not require. Even if the home and business owners did, much of the damage experienced would not be covered for various reasons. Moreover, standard private insurance policies, even those with flood insurance, contain exclusions for damage where, as here, it is caused by governmental action.

(19)    In an Executive Order issued on August 15, 2017, President Trump recognized that "[t]he poor condition of America's infrastructure is estimated to cost a typical American household thousands of dollars each year." This is underestimated in this case, as each of the homes or businesses and associated real or personal property is valued in the hundreds of thousands to millions of dollars each.

(20)    On August 30, 2017, President Trump stated to victims of Harvey that "[w]e are here with you today, we are here with you tomorrow, and we will be with you every single day after to restore, recover, and rebuild."

## CLASS ACTION ALEGATIONS

(21)    This action is appropriate for determination through the Federal Class Action Procedure (Fed. R. Civ. P. 23, et seq.), and the proposed Class Representative(s) herein seek to represent the following proposed Classes:

*Subclass A.* A class consisting of management associations and owners of real property, as of August 25, 2017, that as of that date was zoned and/or lawfully used as residential property in Harris County, Texas, who were subject to the temporary and permanent taking of such property, as a result of increased dam releases, during or after Hurricane Harvey and/or "inevitably recurring" flooding during subsequent hurricanes and severe storms, as a result of the United States Army Corps of Engineers' land, dam, and water flow decisions related to the Barker and Addicks dams. "Owners of real property" does not include the United States government or agencies or instrumentalities thereof. "Residential property" does not include multifamily housing (other than duplexes) but does include duplexes and property rented for use for residential purposes.

*Subclass B.* A class consisting of management associations and owners, as of August 25, 2017, of commercial, industrial, and governmental real property, and of all other real property not included in Subclass A, located in Harris County, Texas, who were subject to the temporary and permanent taking of such property, as a result of increased dam releases, during or after Hurricane Harvey and/or "inevitably recurring" flooding during subsequent hurricanes and severe storms, as a result of the United States Army Corps of Engineers' land, dam, and water flow decisions related to the Barker and Addicks dams. "Owners of commercial, industrial, and governmental real property" does not include the United States government or agencies or instrumentalities thereof.

(22)    The proposed Class is so numerous that joinder is impracticable. The disposition of the claims asserted herein through this class action is the most efficient means of handling these claims and the best way to ensure the interest of the Class Members are preserved and will

also benefit the Court.

(23)  There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a) Whether Defendant made the decision to increase releases from Barker and Addicks dams during and after Harvey;

b) Whether this decision by Defendant caused and/or contributed to the flooding and related damage of the homes and businesses along Buffalo Bayou;

c) Whether Defendants knew or should have known that their decisions and actions would have caused damage to the Class; and

d) Whether Defendants are owed just compensation and fair value for this taking of their home and business property.

(24)  Defendant engaged in a common course of conduct that did not vary from plaintiff to plaintiff, ensuring that common questions of law and fact predominate over questions regarding individual damages and causation, as proof as to one constitutes proof as to all.  A class action is superior to other methods of adjudicating these claims because it is more efficient and economical and will enable the court to manage the litigation more effectively, to continue to monitor the water being released from the dams on a daily basis, and to monitor and address the damages caused thereby.

(25)  Class Representatives and the Class Members have suffered similar harm as a result of Defendant's actions and/or inaction.

(26)  Class Representatives will fairly and adequately represent and protect the interests of the Members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, and said Class Representatives know and are prepared to undertake representation of the interests of the entire class.  Class Representatives have no claims

antagonistic to those of the Class. Class Representatives have retained or are counsel who are experienced in complex class actions, takings, and other actions before this Court.

(27) A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of the claims of all Class Members is impracticable as there are believed to be thousands of similarly situated individuals and entities who sustained damages that were proximately caused by the negligence, fault, gross negligence, willful misconduct, or other actions of one or more of the Defendants. Even if every Class Member could afford the cost of individual litigation, the judicial system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendant's conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

(28) The various claims asserted in this action are also certifiable under the provisions of Rules 23(b)(l), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a) The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

b) The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests;

c) The Defendants opposing the class have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; and

d) The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSE OF ACTION

## TAKING AND INVERSE CONDEMNATION

(29)     Owners had property interests protected by the Fifth Amendment to the United States Constitution;

(30)     Owners had reasonable investment-backed expectations in their property;

(31)     Flooding, lack of power, and related damage to property was foreseeable;

(32)     The Defendant's decisions or actions caused flooding and/or lack of power and related damage that effected temporary and permanent takings;

(33)     Hurricane Harvey was not an intervening event that broke chain of causation; and

(34)     Owners' injury from flooding, lack of power, and related causes was substantial and severe.

(35)     WHEREFORE, the Plaintiffs pray:

(a)     That their request for class certification be granted and an appropriate order issued for notice;

(b)     That their takings claim be granted;

(c)     That the Court order the Defendant to pay just compensation and fair value for all claims in this action;

(d)     That Class Counsel and the Class Representative be awarded and paid directly a reasonable percentage or fee for pursuing this action on behalf of the class;

(e)   That this Court retain jurisdiction to ensure proper payment of claims;

(f)   For such other and further relief as this Court deems just.

Respectfully submitted this 6th day of September, 2017,

                              **NEEL, HOOPER & BANES, P.C.**

                              _____
Bryant S. Banes
Texas State Bar No. 24035950
Federal ID No. 31149
Sean D. Forbes
Texas State Bar No. 24040916
Federal ID No. 603610
1800 West Loop South, Suite 1750
Houston, TX  77027-3008
Tel: (713) 629-1800
Fax: (713) 629-1812
E-mail: bbanes@nhblaw.com
E-Mail: sforbes@nhblaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 6th day of September, 2017, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    Director
    National Courts Section
    Commercial Litigation Branch
    Civil Division
    U.S. Department of Justice
    Washington, DC  20530
    Tel.:  (202) 514-7300

_____
Bryant S. Banes